UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARA DEEGAN,

      Plaintiff,

v.

TRAFFIC TECH INC.,

      Defendant.

Case No. 24-cv-
Hon.

_____/
ERIC STEMPIEN (P58703)
MALLORIE M. BLAYLOCK (P84331)
STEMPIEN LAW, PLLC
Attorneys for Plaintiff
38701 Seven Mile Rd., Suite 445
Livonia, MI 48152
P/F: 734-744-7002
eric@stempien.com
mallorie@stempien.com
_____/

**COMPLAINT AND JURY DEMAND**

Plaintiff, Cara Deegan, by and through her attorneys, Stempien Law, PLLC, hereby complains against Defendant, Traffic Tech, Inc., and in support thereof states:

1. Plaintiff Cara Deegan ("Deegan" or "Plaintiff") is a resident of the City of Dearborn, County of Wayne, State of Michigan.

2. Defendant, Traffic Tech, Inc. ("Traffic Tech" or "Defendant") is a for-profit corporation which conducts systematic and continuous business in the County

1

of Wayne, State of Michigan; its resident agent for service of process being: C T Corporation System, 40600 Ann Arbor Road E., Suite 201, Plymouth, Michigan 48170.

3. Jurisdiction is vested with this Court pursuant to 28 USC §1331, 42 USC §2000e, et. seq., and 28 USC §1367.

4. The events giving rise to this action occurred within the Eastern District of Michigan.

5. On or about September 13, 2023, Deegan filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") concerning Traffic Tech.

6. On or about January 25, 2024, the EEOC issued a Dismissal and Notice of Rights letter to Deegan for her Charge of Discrimination.

## GENERAL ALLEGATIONS

7. Deegan's sex is female.

8. On or about November 21, 2022, Deegan began her employment with Traffic Tech as a Senior Account Executive; with a start date of January 4, 2023.

9. At the time Deegan was hired, it was agreed that Deegan would have a flexible work from home schedule because she was a single mother of two young children whom she was the caregiver for. This understanding was acknowledged and agreed upon by Traffic Tech's Director of Sales, James

2

Jackson ("Jackson"); Vice President of Sales, Kevin Nelson ("Nelson"); Director of Sales for Detroit, Kyle Lincoln ("Lincoln"); and Vice President of North America, Murray Bannerman ("Bannerman").

10. Deegan continued to hold her position as Senior Account Executive until her employment was terminated.

11. As a Senior Account Executive, Deegan was paid a fixed salary on a sales compensation plan twice per month; and was entitled to receive a 20% commission if she reached a $33,000.00 recurring monthly goal; was entitled to receive a $10,000.00 bonus per month if she reached the sales goal of $20,000.00 in gross profits per month for three (3) consecutive months; was entitled to receive a $10,000.00 bonus per month if she reached the sales goal of $30,000.00 in gross profits per month for (3) consecutive months; and, if she reached the latter two goals consecutively, she would also be entitled to a 'kicker bonus' of $10,000.00 that month.

12. During Deegan's tenure as a Senior Account Executive, she was subjected to limitation, discrimination, and retaliation based on her sex.

13. Throughout Deegan's employment, she was not afforded support to meet her commission goals.

14. Throughout Deegan's employment, she was never able to get close to earning commission bonuses because Traffic Tech refused to move her freight and

3

bring new business on that she brought in, among other reasons explained herein.

15. In January 2023, Traffic Tech client, "O.O.G.'s" account was removed from Deegan's assigned clients and was given to a male coworker. As a result, Deegan's gross profits suffered.

16. In March 2023, Deegan worked to create a partnership with prospective client "P," but her male managers never acted on this lead. As a result, Deegan's gross profits suffered.

17. On or about April 18, 2023, Deegan reported to Traffic Tech's CEO, Brian Arnott ("Arnott") that Deegan was not receiving support to succeed in meeting her sales goals and that Traffic Tech was loosing opportunities and accounts as a result.

18. On or about May 24, 2023, Deegan attended a one-on-one meeting with Bannerman and Lincoln.

19. At the time of the May 24, 2023 meeting, Deegan was to report directly to Bannerman. Prior to this meeting, Deegan had never met Bannerman.

20. At the beginning of the May 24, 2023 meeting, Bannerman and Lincoln told Deegan about an ex-employee who was fired for sexual harassment for sending pictures of his genitalia to a female Traffic Tech employee, and how said ex-employee had a drinking problem.

4

21. Once the conversation shifted to Deegan, Bannerman asked Deegan what her sales goal was, Deegan said that her sales goal was $33,333.00 per month, and Bannerman advised Deegan to scale her business back, take baby steps, and shoot for only a $3,000.00 per week sales goal.

22. Accordingly, on May 24, 2023, Deegan's sales goal was reduced from $33,333.00 per month to $3,000.00 per week/$12,000.00 per month in gross profit sales because she was taking on too many large opportunities.

23. At the time of the May 24, 2023 reduction, Deegan's male coworkers' sales goals were $5,000.00 per week/$20,000.00 per month.

24. During the May 24, 2023 meeting, Bannerman warned Deegan that her April 18, 2023 complaint to Arnott 'put a target on her back.'

25. During the May 24, 2023 meeting, Bannerman facetiously asked Deegan if she feels better after reporting to Arnott. Bannerman told Deegan that he and management are the only ones that actually fix problems; that going to the CEO will only create more issues for Deegan; that sales representatives who report to the CEO are short lived; and that Deegan should think twice before reporting to the CEO again.

26. On May 30, 2023, Deegan reported to Arnott and Director of Human Resources, Emilie Harvey ("Harvey"), that Deegan was being singled out due to her sex; that she was being subjected to inappropriate conversations

concerning sexual harassment and "dick pics;" that Bannerman and Lincoln's actions and words made her immediately feel confused and uncomfortable; that she has never had a manager, let alone the Vice President of a company, discuss such a crude and unprofessional topic in front of her; that her sales goal numbers were reduced because she is the only female employee; that male employees had their sales goal numbers increased; that she was being discriminated against on the basis of her sex; and that Bannerman and Lincoln were using Traffic Tech's open door policy of reporting to Arnott against Deegan.

27. On May 30, 2023, Deegan asked Arnott to increase her sales goal numbers so that they correlate with her level of performance; told Arnott that she feels her home environment is safer and less intimidating than the office; and requested that she be allowed to work from home unless she was needed in-office for a special request, in order to feel safe and not be intimidated by her male coworkers and supervisors.

28. On May 31, 2023, Lincoln advised Deegan that a client of Traffic Tech, "C.H.," was being assigned to her and she was Traffic Tech's point of contact with C.H.

29. C.H. was never actually assigned to Deegan and, upon information and belief, was assigned to a male employee and not Deegan because of her sex and in

6

retaliation for her reporting because C.H. was a Traffic Tech client through which Deegan may be able to satisfy her sales goal to earn commission.

30. On June 1, 2023, Bannerman texted Deegan on her personal phone, asking Deegan to contact him. Upon information and belief, Bannerman's communication he wished to relay to Deegan was going to be inappropriate because Traffic Tech issues company phones to its employees, meaning Bannerman took deliberate steps to locate Deegan's personal number and intentionally contacted her through non-approved channels.

31. On June 5, 2023, Harvey held a meeting with Deegan during which they discussed Bannerman's and Lincoln's inappropriate statements made to Deegan; Harvey assured Deegan that an investigation would be undertaken; Deegan reiterated that she would be working strictly remotely because she felt uncomfortable around Bannerman and Lincoln and because her children would be home on summer vacation and cannot afford childcare; Harvey stated that Bannerman would have had to accessed Deegan's payroll in order to get her personal phone number; and Harvey did not indicate any issue with Deegan working remotely.

32. On June 15, 2023, Deegan reached out for assistance with a client's account to the only person she was approved to, Lincoln. Lincoln directed Deegan to contact her team lead, Cody Jones ("Jones"), only if it was urgent and Lincoln

confirmed that Jones ignores Deegan and does not afford her resources, and Lincoln told Deegan to take what Jones says with a grain of salt.

33. On July 13, 2023, Harvey advised Deegan that actions taken during Traffic Tech's investigation could not be shared with her and that Deegan's reporting structure was changed to ensure she was safe. It was not demanded that Deegan report to work in-office.

34. On July 31, 2023, Deegan was hailed in for an urgent performance review with Lincoln and Nelson.

35. During the July 31, 2023 performance review, Deegan was placed on a Performance Improvement Plan; was told that it is urgent that her gross profit sales increase production despite Traffic Tech having forcibly lowered her sales goals; was told that she was no longer permitted to work remotely; was told that she must return to work in-office at least three (3) days per week; was told that she needed to report to and utilize Lincoln as a resource necessary in her growth at Traffic Tech; and was told that her customer outreach was insufficient despite having secured opportunities with two very large corporations because she was focusing on the "long term."

36. On July 31, 2023, Nelson and Lincoln changed Deegan's gross profit sales goal to $6,666.66 and Deegan was advised that she would make commission if she made $33,000.00 in gross profit sales.

37. In August 2023, Traffic Tech client, "G's" shipment was removed from Deegan's assignments and given to a male coworker. As a result, Deegan's gross profits suffered.

38. On August 1, 2023, Deegan pointed out to Nelson that the "urgent need" for Deegan to increase production after seven (7) months of employment illustrates that Traffic Tech had affected her numbers in a negative way since opportunities were dropped and accounts were lost; that Traffic Tech was retaliating against Deegan for reporting sex discrimination; that Deegan being singled out for not having enough "short wins" and forcing her on a Performance Improvement Plan was pretext for sex discrimination; that, since the moment Deegan was hired, there was a mutual understanding that Deegan would have the flexibility of working from home; and that Deegan is being forced to work in-office with Lincoln if she wished to remain employed by Traffic Tech.

39. Also on August 1, 2023, Deegan asked Nelson why, despite HR advising Deegan that 'action was taken' against Lincoln, was Deegan being forced to work and collaborate with Lincoln; i.e. the individual Deegan submitted a formal complaint against that was sexual in nature.

40. Also on August 1, 2023, Deegan told Nelson that Traffic Tech was continuing efforts to subject Deegan to a hostile work environment and that the actions

9

taken against Deegan are in obvious retaliation to her formal complaint to Arnott.

41. On August 14, 2023, Harvey told Deegan that she must work in-office beginning on August 15, 2023, despite Deegan's August 11, 2023 email in which Deegan explicitly stated that she did not have childcare options available on August 14 or 15, 2023.

42. On August 16, 2023, Harvey told Deegan that Deegan would only be allowed to continue working from home until August 21, 2023 and would then be required to work in-office at least three (3) days per week; that Traffic Tech concluded its investigation into Lincoln; that Lincoln's presence in the office did not warrant deviation from Traffic Tech policies; and that Deegan was now required to follow instruction from Nelson.

43. On August 16, 2023, Deegan advised Harvey of the hardship in finding childcare for her children with only five (5) days' notice that she must return to work in office and reminded Harvey that she [Deegan] already advised Harvey that working in-person with Lincoln makes her extremely uncomfortable.

44. On or about August 18, 2023, Deegan was still required to report to Bannerman, illustrating that Deegan's reporting structure had not changed.

45. In August 2023, Deegan was working with Traffic Tech client, "L.C.", but the shipment opportunity was lost because Deegan's male coworkers in the air team never contacted Deegan regarding the deductible. As a result, Deegan's gross profits suffered.

46. On or about August 24, 2023, Deegan put forth efforts to secure a Mexico-based shipment, but the shipment was ultimately lost because of Traffic Tech's male employees' inadequate response time to Deegan's rate request. As a result, Deegan's gross profits suffered.

47. On or about August 29, 2023, Deegan sent a rate request for a shipment requiring same day pickup, but Deegan did not receive the rate until August 30, 2023, resulting in the shipment being lost. As a result, Deegan's gross profits suffered.

48. On Tuesday, August 29, 2023, Harvey demanded that Deegan report to work in-office for the remainder of the work week and thereafter, and that Lincoln's presence in the office did not warrant deviation from company policies.

49. During Deegan's employment, she worked to create a partnership with prospective client "T.1.A.S.," but her male managers never acted on this lead. As a result, Deegan's gross profits suffered.

50. During Deegan's employment, she worked to create a partnership with the Detroit Chamber of Commence, but her male coworkers never acted on this lead. As a result, Deegan's gross profits suffered.

51. During Deegan's employment, she worked to create a partnership with prospective client "D.N.C.L.." but her male coworkers never acted on this lead. As a result, Deegan's gross profits suffered.

52. Throughout Deegan's employment, she was never the subject of a write up or complaint.

53. On August 31, 2023, Traffic Tech terminated Deegan.

54. Upon information and belief, Traffic Tech's male employees' sales goals were not reduced when they took on large opportunities; Traffic Tech's male employees reporting complaints does not 'put targets on their backs;' Deegan's male coworkers' gross profit sales numbers were similar to Deegan's, but said male coworkers were not placed on Performance Improvement Plans or berated for securing long term, high sales opportunities; Deegan's male coworkers were not terminated on the basis of their sex or in retaliation for reporting sex discrimination and limitation on the basis of sex.

55. The employment disciplinary actions taken against Deegan were all because of her gender, female.

56. Defendant's discharge of Deegan was pretext for discharging Deegan from her employment because she reported and opposed violations of Title VII of the Civil Rights Act of 1964 ("Title VII") and Elliott-Larsen Civil Rights Act ("ELCRA"), MCL 37.2101 et seq.

57. In or about the beginning of February 2024, Bannerman's employment with Traffic Tech was terminated, after the EEOC made contact with Traffic Tech.

## COUNT I
## VIOLATION OF TITLE VII OF CIVIL RIGHTS ACT
## SEX DISCRIMINATION

58. Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein and further states that:

59. Title VII, specifically 42 USC §2000e-2(a)(1), provides that "it shall be an unlawful employment practice for an employer… to discharge…or otherwise discriminate against any individual with respect to h[er] compensation, terms, conditions or privileges of employment because of such individual's…sex…"

60. 42 USC §2000e-2(a)(2) provides that "it shall be an unlawful employment practice for an employer… to limit, segregate, or classify his employees…in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect [their] status as an employee because of such individual's…sex."

61. Plaintiff was an employee of Defendant.

62. Defendant was Plaintiff's employer as that term is defined by Title VII.

63. Plaintiff is a member of a protected class because of her sex.

64. Plaintiff was qualified for the position of Senior Account Executive.

65. Plaintiff suffered adverse employment actions, including but not limited to, limitation on employment opportunity, reprimand, discipline, and discharge.

66. Defendant's stated reasons for the adverse employment actions were false and pretext for sex discrimination.

67. Other employees, including those who held sexually explicit conversations, took on large opportunities, and/or had similar gross profit sales numbers were not subjected to the same adverse employment actions as Plaintiff.

68. Plaintiff was discharged because of her sex.

69. As a direct and proximate result of Defendant's violations of Title VII, Plaintiff has suffered damages including, but not limited to, lost past and future wages, lost past and future employment benefits, loss of earning capacity, severe emotional distress, costs and attorneys fees.

## COUNT II
## VIOLATION OF TITLE VII OF CIVIL RIGHTS ACT
## RETALIATION FOR OPPOSING SEX DISCRIMINATION

70. Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein and further states that:

71. Plaintiff engaged in protected activity when she complained to Defendant about the repeated sex-based discrimination and limitations by Defendant's employees, as more fully described herein.

72. Plaintiff's protected activity was known to Defendant.

73. Defendant failed and refused to take any action regarding the limitation on, and discrimination of, Plaintiff.

74. Plaintiff suffered adverse employment actions, including limitation, reprimand and discharge.

75. There is a causal connection between the protected activity and the adverse employment actions taken against Plaintiff.

76. As a result of the foregoing, Plaintiff has suffered damages, including but not limited to lost past and future wages, lost past and future employment benefits, loss of earning capacity, severe emotional distress, costs and attorneys fees.

## <u>COUNT III</u>
## <u>VIOLATION OF ELLIOTT-LARSEN CIVIL RIGHTS ACT</u>
## <u>SEX DISCRIMINATION</u>

77. Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein and further states that:

78. ELCRA, specifically MCL 37.2202, et seq., provides that an employer shall not "discriminate against an individual with respect to employment,

15

compensation, or a term, condition, or privilege of employment, because of…

sex…" MCL 37.2202(1)(a).

79. Plaintiff was an employee of Defendant.

80. Defendant was Plaintiff's employer as that term is defined by ELCRA.

81. Plaintiff is a member of a protected class because of her sex.

82. Plaintiff was qualified for the position of Senior Account Executive.

83. Plaintiff suffered adverse employment actions, including but not limited to, limitations, reprimands, discipline, and discharge.

84. Defendant's stated reasons for the adverse employment actions were false and pretext for sex discrimination.

85. Other male employees, including those who held sexually explicit conversations, took on large opportunities, and/or had similar gross profit sales numbers were not subjected to the same adverse employment actions as Plaintiff.

86. Plaintiff was discharged because of her sex.

87. As a direct and proximate result of Defendant's violations of ELCRA, Plaintiff has suffered damages, including, but not limited to lost past and future wages, lost past and future employment benefits, loss of earning capacity, severe emotional distress, costs and attorneys fees.

## COUNT IV
## VIOLATION OF ELLIOTT-LARSEN CIVIL RIGHTS ACT
## RETALIATION FOR OPPOSING SEX DISCRIMINATION

88. Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein and further states that:

89. Plaintiff engaged in protected activity when she complained to Defendant about the repeated sex discrimination by Defendant's employees, as more fully described herein above.

90. Plaintiff's protected activity was known to Defendant.

91. Defendant failed and refused to take any action regarding the discrimination of Plaintiff.

92. Plaintiff suffered adverse employment actions, including limitation, reprimand and discharge.

93. There is a causal connection between the protected activity and the adverse employment actions taken against Plaintiff.

94. As a result of the foregoing, Plaintiff has suffered damages, including but not limited to lost past and future wages, lost past and future employment benefits, loss of earning capacity, severe emotional distress, costs and attorneys fees.

WHEREFORE, Plaintiff, Cara Deegan, prays that this Honorable Court enter a judgment in her favor and against Defendant, Traffic Tech, Inc., in an amount that this Court deems fair and just, plus costs, interest and attorney fees.

## JURY DEMAND

Plaintiff, Cara Deegan, hereby demands a trial by jury of the within cause.

Respectfully submitted,

STEMPIEN LAW, PLLC

*/s/ Mallorie M. Blaylock*
Mallorie M. Blaylock (P84331)
Attorney for Plaintiff
38701 Seven Mile Rd., Suite 445
Livonia, MI 48152
P/F: 734-744-7002
mallorie@stempien.com

Dated: April 24, 2024